NO. 13-1608

In The

# United States Court of Appeals

For the Fourth Circuit

NATIONAL HERITAGE FOUNDATION, INC.

Appellant,

v.

JOHN R. BEHRMANN, NANCY BEHRMANN and THE HIGHBOURNE FOUNDATION,

Appellees.

_____

APPEAL FROM:

The United States District Court
For the Eastern District of Virginia, Alexandria Division
The Honorable Anthony J. Trenga
District Court Case No. 1:12-cv-01329-AJT-JFA

_____

**APPELLEES' RESPONSE BRIEF**

_____

Glenn W. Merrick
G.W. MERRICK & ASSOCIATES, LLC
6300 South Syracuse Way, Suite 220
Centennial, Colorado 80111
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
E-Mail: gwm@gwmerrick.com

Daniel J. Schendzielos
COLORADO TRIAL LAWYERS
    & LEGAL SERVICES, LLC
8547 East Arapahoe Road, Suite J-534
Greenwood Village, Colorado 80112
Telephone: (303) 330-1234
Facsimile: (303) 957-2382
E-mail: denverdaniel@gmail.com

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed.R.App.P. 26.1 and Local Rule 26.1, Appellants, John Behrmann, Nancy Behrmann and Highbourne Foundation (collectively, the "Appellees") make the following mandatory disclosures:

1.  None of the Appellees is a publicly held corporation or other publicly held entity.

2.  None of the Appellees is owned by a parent corporation.

3.  None of the stock of the Appellees is owned by a publicly traded corporation or publicly held entity.

4.  None of the Appellees is a trade association.

5.  This case arises out of a chapter 11 bankruptcy proceeding, *In re National Heritage Foundation, Inc.*, Case No. 09-10525-SSM pending in the United States Bankruptcy Court for the Eastern District of Virginia.

s/ Glenn W. Merrick
Glenn W. Merrick, CO 10042
G.W. MERRICK & ASSOCIATES, LLC
6300 South Syracuse Way, Suite 220
Centennial, Colorado 80111
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
gwm@gwmerrick.com

COUNSEL FOR APPELLEES

ii

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

CORPORATE DISCLOSURE STATEMENT ....................................................... ii

TABLE OF CONTENTS....................................................................................... iii

TABLE OF AUTHORITIES ................................................................................ v

STATEMENT OF ISSUES PRESENTED FOR REVIEW ...................................... 1

STATEMENT OF THE CASE .............................................................................. 1

STATEMENT OF FACTS .................................................................................... 7

SUMMARY OF ARGUMENT ............................................................................ 12

ARGUMENT ....................................................................................................... 13

      A.    The District Judge Did Not Apply the Incorrect Standard
           of Review ......................................................................... 13

      B.    An Identical Result Is Not Required Following Remand ................... 15

      C.    The District Court Did Not Err in Determining that
           The Challenged Provisions Are Not Supported by the
           Factual Record.................................................................. 19

              1.    The Lower Courts Did Not Err in Finding
                    that the Releases are Not Essential to NHF's
                    Reorganization .......................................................... 21

              2.    NHF's Directors and Officers Did Not
                    Contribute Financially ............................................... 24

              3.    The Impacted Class Did Not Vote in Favor
                    of the Reorganization Plan........................................ 26

iii

4.    The Reorganization Plan Does Not Provide a
Mechanism to Pay the Affected Classes ...................................28

5.    The Reorganization Plan Does Not Provide an
Opportunity for Those Who Chose Not to Settle
to Recover in Full .................................................................30

CONCLUSION ..........................................................................32

CERTIFICATE OF COMPLIANCE .....................................................34

CERTIFICATE OF SERVICE .............................................................35

iv

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Anderson v. Bessemer City*
470 U.S. 564 (U.S. 1985)...................................................................8, 18

*Ankeny v. Meyer (In re Ankeny)*
184 Bankr. 64 (BAP 9th Cir. 1995) ...............................................13, 14

*Behrmann v. National Heritage Foundation, Inc.*
663 F.3d 704 (4th Cir. 2011)....................................................1, 4, 20, 24

*Chicopee Mfg. Corp. v. Kendall Co.*
288 F.2d 719 (4th Cir. 1961)...................................................................16

*Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*
280 F.3d 648 (6th Cir. 2002)......................................................20, 30, 31

*Cuthbertson v. Biggers Bros.*
702 F.2d 454 (4th Cir. 1983)............................................................16, 17

*Erhart v. Fina (In re Fina)*
2012 U.S. Dist. LEXIS 163855 (E.D. Va. November 15, 2012)............18

*Heilig-Meyers Co. v. Wachovia Bank N.A. (In re Heilig-Meyers Co.)*
328 Bankr. 471 (E.D. Va. 2005) ..............................................................18

*Henry A. Knott Co. v. Chesapeake & Potomac Tel. Co.*
772 F.2d 78 (4th Cir. 1985).....................................................................14

*In re Leonard*
849 F.2d 975 (5th Cir. 1988)...................................................................13

*Luhr Bros., Inc. v. Shepp (In re Luhr Bros., Inc.)*
157 F.3d 333 (5th Cir. 1998)...................................................................16

*Menard-Sanford v. Mabey (In re A.H. Robins Co.)*
880 F.2d 694 (4th Cir. 1989).......................................................................29, 30, 31

*In re Middle Plantation of Williamsburg, Inc.*
47 Bankr. 884 (E.D. Va. 1984) ..................................................................20

*Milbrew, Inc. v. Comm'r*
710 F.2d 1302 (7th Cir. 1983)....................................................................15

*In re National Heritage Foundation, Inc.*
478 Bankr. 216 (E.D. Va. 2012) .........................................................1, 5

*In re National Heritage Foundation, Inc.*
2009 Bankr. LEXIS 4928 (Bankr. E.D. Va. October 16, 2009)...............................4

*National Heritage Foundation, Inc. v. Behrmann*
2013 U.S. Dist. LEXIS 49081 (E.D. Va. April 3, 2013) ................................2, 7, 16

*National Heritage Foundation, Inc. v. Philadelphia Ins. Co.*
2012 U.S. Dist. LEXIS 154287 (E.D. Va. October 25, 2012)................................24

*New Hampshire v. Maine*
532 U.S. 742 (2001).....................................................................................23

*Norwest Bank Worthington v. Ahlers*
485 U.S. 197 (1988).....................................................................................25

*Pegram v. Herdrich*, 530 U.S. 211 (2000).............................................................23

*Penn Nat'l Mut. Cas. Ins. Co. v. Roberts*
668 F.3d 106 (4th Cir. 2012)...............................................................22, 23

*Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*
616 F.2d 464 (10th Cir. 1980)..................................................................16

*THE SEVERANCE*
152 F.2d 916 (4th Cir. 1945)....................................................................17

*Skippy, Inc. v. CPC Int'l, Inc.*
674 F.2d 209 (4th Cir. 1982)..............................................................20, 26, 28, 31

*SSMC, Inc. v. Steffen*
102 F.3d 705 (4th Cir. 1996)...................................................................20, 26, 28, 31

*Townsend v. Gray Line Bus Co.*
767 F.2d 11 (1st Cir. 1985).....................................................................................15

## **Statutes and Rules**

11 U.S.C. § 502.....................................................................................................29

11 U.S.C. § 1124...................................................................................................27

11 U.S.C. § 1126...............................................................................................9, 27

11 U.S.C. § 1129...................................................................................................22

F.R.A.P. 28..............................................................................................................8

Fed.R.Bankr.P. 3003.............................................................................................27

Fed.R.Bankr.P. 8013.............................................................................................13

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the District Court erred -- after *de novo* review of the findings and conclusions of the Bankruptcy Court -- in affirming the Bankruptcy Court's judgment that the non-debtor release/injunction provisions contained in a chapter 11 plan of reorganization are _not_ supported by the record established at the October 15, 2009 confirmation hearing.

## STATEMENT OF THE CASE

This appeal stems from the insistence of National Heritage Foundation, Inc. ("NHF")[1] to include in its reorganization plan certain *extraordinary* non-debtor release and injunction provisions set forth in Sections 7.19 and 7.20 of that plan (the "Challenged Provisions"). The Challenged Provisions are designed to insulate those in control of NHF – specifically the Houk family -- from any liability for pre-petition fraud, defalcation, misconduct and other wrongdoing. The Challenged Provisions have been spurned by this Court in an earlier appeal in this case, *Behrmann v. Nat'l Heritage Foundation, Inc.,* 663 F.3d 704 (4th Cir. 2011), by the Bankruptcy Court on remand, *In re Nat'l Heritage Foundation, Inc.,* 478 Bankr. 216 (Bankr. E.D.Va. 2012), and by the District Court

---

[1]    There is no relationship between National Heritage Foundation, Inc., and The Heritage Foundation, the latter being the well known conservative research and educational institution which maintains its headquarters in Washington, D.C.

1

on appeal from the Bankruptcy Court judgment. *Nat'l Heritage Foundation, Inc. v. Behrmann*, 2013 U.S. Dist. LEXIS 49081 (E.D.Va. April 3, 2013). Nevertheless, NHF persists undaunted in pursuing this appeal.

On January 24, 2009, NHF filed its voluntary petition in the Bankruptcy Court seeking relief under chapter 11 of the Bankruptcy Code. **JA0001.**[2]   On September 9, 2009, NHF filed its Third Amended Plan of Reorganization. **JA0436.**  Appellees timely objected, asserting among other things that a reorganization plan containing the Challenged Provisions should not be confirmed. **JA0588-93.**  The Bankruptcy Court set the confirmation hearing for October 15, 2009.  Two days prior to that hearing -- on October 13, 2009 -- NHF filed its Fourth Amended Plan of Reorganization (the "Reorganization Plan"). **JA0621.**  The Reorganization Plan also contained the Challenged Provisions.

On October 15, 2009, Bankruptcy Judge Stephen Mitchell conducted a brief confirmation hearing.  NHF offered only scant evidence in support of the Challenged Provisions. **JA0948-50.**  In fact, NHF offered only a single witness (Janet Ridgely) who testified briefly at the confirmation hearing. **JA0926.**  NHF's

---

[2]      For the Court's convenience, a citation ("JA ___") refers to the Joint Appendix filed with this Court by NHF on July 18, 2013.

representation notwithstanding, no other evidence was offered in support of the Challenged Provisions.[3]

Having failed to convince Judge Mitchell to confirm the Reorganization Plan on October 15, 2009 **(JA1025-29),** the following morning NHF filed an "Exhibit" to the Reorganization Plan.  The Exhibit narrowed the reach of the Challenged Provisions, but continued to provide complete insulation for the Houk family.  **JA1068-71.**  Later that day, October 16, 2009, Judge Mitchell entertained further argument in respect of the revised Challenged Provisions during which Appellees renewed and continued their objections. **JA1072-90.**  Judge Mitchell acknowledged that the Challenged Provisions remained "problematic" **(JA1084),** and that they are "disfavored" **(JA1084-85).** Judge Mitchell described the Challenged Provisions as a "close case," **id.,** but he overruled Appellees' objections and confirmed the Reorganization Plan, as amended by the "Exhibit" filed a few hours earlier.  **JA1086.**  In so doing, Judge Mitchell signed -- without amendment, revision or comment -- the exact form of Confirmation Order (the "Confirmation Order") that was tendered by NHF's

---

[3]    NHF's representation that there was "an extensive two-day evidentiary hearing" in connection with the confirmation of the Reorganization Plan, **NHF Opening Brief at p. 7**, is materially inaccurate.  Ms. Ridgely was the only witness who testified, and her brief testimony all occurred on October 15, 2009.  **JA0926-93.**  The balance of the proceedings before the Bankruptcy Court on October 15 and 16 were dedicated to preliminary non-evidentiary matters and arguments of counsel.

counsel. **JA1033-67**.[4]   Appellees appealed to the District Court. On August 17, 2010, Senior Judge Claude Hilton entered a one-page Order affirming the Bankruptcy Court's Confirmation Order. **JA1366.** Appellees then appealed to the Fourth Circuit.

This Court reversed, and in vacating this Court's August 17, 2010 judgment affirming the Bankruptcy Court's Confirmation Order, *Behrmann v. Nat'l Heritage Foundation, Inc.,* 663 F.3d 704 (4th Cir. 2011), the panel admonished respecting "***the very limited circumstances***" where plan terms such as the Challenged Provisions are appropriate. *Id*. at 711 (emphasis supplied). This Court underscored that in order to sustain the Challenged Provisions the Bankruptcy Court's findings of fact must justify legal conclusions that could not apply "***just as well to any number of reorganizing debtors***." *Id.* at 712-13 (Emphasis supplied). Ultimately, this Court remanded for the Bankruptcy Court to determine whether the evidentiary record established at the confirmation hearing on October 15, 2009 would support the "specific factual findings" necessary to uphold the Challenged Provisions. *Id.* at 713.

On remand to the Bankruptcy Court, Judge Brian Kenney (who assumed responsibility for this case following the retirement of Judge Mitchell)

---

[4]    Judge Mitchell's execution of the Confirmation Order submitted by NHF"s counsel is reported at *In re Nat'l Heritage Foundation, Inc.,* 2009 Bankr. LEXIS 4928 (Bankr. E.D. Va. October 16, 2009).

4

conducted a Status Conference on March 6, 2012.  At that Status Conference, NHF

affirmed that it did not wish to present evidence, and that NHF _expressly_ _consented_

to Judge Kenney making findings based upon the record established at the October

15, 2009 confirmation hearing.  **JA1551-52 at ¶57.**[5]  Thereafter, both parties fully

briefed for Judge Kenney the evidence presented at the October 15 confirmation

hearing and how the evidence related to the issues to be decided by the Bankruptcy

Judge.  **SA010-24**.[6]

        On August 27, 2012, after a thorough and detailed review of the

record from the confirmation hearing, Judge Kenney entered his extensive and

carefully-reasoned Memorandum Opinion (the "August 27 Opinion"), **JA1541-68**[7]

and a corresponding "Order Adjudging Permissibility of Release, Injunction and

Exculpation Provisions" ("August 27 Order"), **JA1570-72.**  In the August 27

---

[5]    Appellees did not learn until later that a few months earlier (in November of 2011)  the IRS had _revoked_ its determination that NHF qualifies as an organization described in Sections 501(c)(3) and 170(c)(2) of the Internal Revenue Code.  **_See_ IRC Bulletin 2011-47 at JA1622**.  By avoiding reopening the evidentiary record NHF avoided disclosing this important development to the Bankruptcy Court.  NHF has now removed all content (including all description of its business and all solicitation materials for charitable donations) from its website, www.nhf.org.  _Notably, NHF can no longer operate as a IRC §501(c)(3) public charity under which it proceeded in chapter 11_.

[6]    A citation ("SA___") refers to the Supplemental Appendix filed with this Court contemporaneously with this Response Brief.

[7]    Judge Kenney's Memorandum Opinion is reported at _In re Nat'l Heritage Foundation, Inc.,_ 478 Bankr. 216 (Bankr. E.D.Va. 2012).

Opinion, Judge Kenney focused upon the Challenged Provisions. He carefully detailed: (i) the scant and insubstantial evidence presented at the confirmation hearing in support of the Challenged Provisions, **JA1548 at ¶¶46-47,** (ii) the Fourth's Circuit's opinion reversing and remanding, and (iii) the applicable statutory and decisional law from the Fourth Circuit and beyond. In his exhaustive August 27 Opinion -- which spans more than twenty-seven (27) pages -- Judge Kenney determined that the confirmation hearing evidentiary record does _not_ support the release provision contained at Section 7.19 of the Reorganization Plan. Judge Kenney further determined that to the extent that the injunction provision set forth in Section 7.20 of the Reorganization Plan implements the release provision it also cannot stand.

Observing that the Reorganization Plan contains Section 12.2 -- an explicit provision authorizing the Bankruptcy Court to excise any plan provisions that are contrary to applicable law, **JA1551 at ¶53** -- Judge Kenney determined that the Challenged Provisions are unenforceable. **JA1567-68; *see also* JA1570 at ¶¶1, 3**.

NHF appealed Judge Kenney's August 27 Opinion and his August 27 Order to the District Court arguing that the Bankruptcy Judge had erred in numerous respects on remand from the Fourth Circuit. On April 3, 2013, the District Court entered its 20-page Memorandum Opinion (the "April 3 Opinion").

6

Judge Anthony Trenga noted that NHF urged that Judge Kenney's factual findings were entitled to no deference and should be reviewed *de novo*. Although Judge Trenga disagreed, Judge Trenga emphasized that "the Court has reviewed the record in detail and affirms the Bankruptcy Court's findings of fact ***under either standard*.**" **JA1825, n.6** (emphasis supplied).[8]   After an exhaustive review of the relevant facts and controlling law the District Court found and concluded that: (1) the Bankruptcy Court did not exceed the mandate on remand; (2) the findings of fact that formed the factual basis for the Bankruptcy Court's decision were not clearly erroneous and are, in fact, fully supported by the record; and (3) applying the applicable law *de novo* to the factual findings of the Bankruptcy Court, the [Challenged Provisions] were not warranted as part of the Plan.  **JA1825-37.**

## STATEMENT OF FACTS

NHF's "Statement of the Case," **NHF Opening Brief at pp. 6-10**, and its "Statement of Facts," **id., at pp. 10-30**, contains a host of distortions and misrepresentations vigorously contested by Appellees in virtually all facets. These sections of NHF's Opening Brief invite this Court to accept and adopt a fanciful milieu on appeal that has <u>*never*</u> been accepted or adopted in any findings by any court. Indeed, NHF invites this Court to ignore the Supreme Court's

---

[8]   Judge Trenga's April 3 Opinion is reported at *Nat'l Heritage Foundation, Inc. v. Behrmann*, 2013 U.S. Dist. LEXIS 49081 (E.D.Va. April 3, 2013).

admonishment against "appellate fact finding." The High Court has made clear that in reviewing the findings of the lower court sitting without a jury an appellate court's role "is *not* to decide the factual issues de novo." *Anderson v. Bessmer City,* 470 U.S. 564, 573 (U.S. 1985) (emphasis supplied). In contradistinction, Appellees adopt a different approach. As provided in F.R.A.P. 28, *only the facts relevant to the issues submitted for review* are presented here. These are contained in Judge Kenney's August 27 Opinion.

At the time of confirmation, NHF was a Georgia corporation operating as an IRC §501(c)(3) public charity. **JA1541 at ¶1.** NHF is dominated and controlled by the Houk family -- which family members held all of NHF's officer positions, and all but one of NHF's board seats. **JA1542 at ¶¶2-6.** NHF's bylaws provided for indemnification of its directors and officers to the extent permitted by the Georgia Non-Profit Corporation Code. **JA1548 at ¶48.** Prior to its bankruptcy filing, NHF managed net assets with a book value of $152 million. **JA1542 at ¶9.**

NHF filed a chapter 11 bankruptcy case on January 24, 2009 as a result of being unable to post security to prevent execution upon a Texas state court judgment exceeding $6 million that had been entered against NHF. **JA1543 at ¶¶14-15.** Appellees timely filed creditor claims in the NHF chapter 11

reorganization case based upon their demand to "rescission of donations." **JA1544-45 at ¶¶21-27.**

NHF proceeded to confirmation on its Fourth Amended Plan of Reorganization (the "Reorganization Plan"), **JA1547-48 at ¶¶41-44**, which was filed on October 13, 2009. **JA0621.** In addressing the reorganization, and NHF's Reorganization Plan, Judge Kenney found four important facts:

A.    NHF's officers and directors have made no financial contribution in exchange for the highly valuable benefits that they were to derive from the Challenged Provisions. **JA1558.**

B.    Appellees' claims were placed in Class III(C) of the Reorganization Plan (which had been crafted to render Appellees' claims "unimpaired" under the Bankruptcy Code). Thus, Appellees -- and all other members of Class III(C) -- were stripped by 11 U.S.C. §1126(f) of any opportunity to vote on the Reorganization Plan. **JA1547 at ¶42; JA1552.**

C.    The Reorganization Plan does not contain any mechanism for payment of the claims alleged against the Houk family members barred by the release contained in the Challenged Provisions. **JA1563.**

D.    The Reorganization Plan does not provide for payment outside of the plan of the claims against the Houk family members. Indeed, the release

contained in the Challenged Provisions essentially bars any opportunity for payment of the claims impacted by the release. *Id***.**

Appellees timely objected to confirmation. Among Appellees' objections to confirmation of the Reorganization Plan was the assertion that the Challenged Provisions (insulating the non-debtors from suit by innocent third parties who suffered financial losses as a result of the pre-petition fraud, defalcation, misconduct and other wrongdoing of the Houk family members) were impermissible components of the Reorganization Plan. **JA1548 at ¶45.**

The only testimony in offered by NHF at the October 15, 2009 confirmation hearing was that of Janet Ridgely, a member of the Houk family. **JA1542 at ¶4; JA1548 at ¶46.** In respect of the Challenged Provisions, Ms. Ridgely testified that there was "concern" that the non-debtor directors and officers (the Houk family members) "could be sued," and that no one wanted the potential of litigation hanging over them going forward. **JA1548 at ¶46.** Tellingly, however, Ms. Ridgely also testified that she was not aware of any factors or influences that were unique to the Houk family members that distinguished them from the management of any other chapter 11 debtor. **JA0964.** She also testified that *none* of NHF's directors and officers -- *including Ms. Ridgely* -- had come forward to say that they would decline to serve in the capacity of a director or

officer unless the Challenged Provisions were included in the Reorganization Plan. **JA1548 at ¶47**.

Judge Kenney found that it was unlikely that the Houk family members would resign from NHF owing solely to the assertion of third party claims against them. **JA1559.** He observed that even if NHF directors and/or officers resigned, the departing Houk family members would not eliminate liability for acts or omissions occurring prior to resignation. *Id***.** Moreover, Judge Kenney found that NHF had offered no evidence that NHF needed to attract new directors or officers, and it offered no evidence respecting how the inclusion of the Challenged Provisions would impact any such need. **JA1559-60.**

Judge Kenney noted that on October 16, 2009, the Bankruptcy Court had entered the Confirmation Order (confirming the Reorganization Plan containing a narrowed scope of the Challenged Provisions). **JA1549 at ¶49.** However, even in the narrower version the Challenged Provisions (Sections 7.19 and 7.20 of the Reorganization Plan) continued to insulate the non-debtors (the Houk family members) from liability for pre-petition wrongdoing and misconduct. **JA1549-50 at ¶51.** Of significance, Judge Kenney observed that the confirmed Reorganization Plan contains a "severability" provision -- Section 12.2 -- which permitted the Bankruptcy Court to declare unenforceable and excise any plan

provisions that are unlawful or inappropriate. The severance does not affect the enforceability of the balance of the Reorganization Plan. **JA1551 at ¶53**.

On appeal to the District Court, Judge Trenga determined that he would review the record from the confirmation hearing *de novo*. After an exhaustive review of the relevant facts and controlling law the District Court found and concluded that: (1) the Bankruptcy Court did not exceed the mandate on remand; (2) the findings of fact that formed the factual basis for the Bankruptcy Court's decision were not clearly erroneous and are, in fact, fully supported by the record; and (3) applying the applicable law *de novo* to the factual findings of the Bankruptcy Court, the [Challenged Provisions] were not warranted as part of the Plan. **JA1826-37.**

## SUMMARY OF ARGUMENT

NHF pursues three avenues of attack on appeal in assailing Judge Kenney's August 27 Opinion and Judge Trenga's April 3 Opinion. First, NHF urges that Judge Trenga applied the wrong standard of review of Judge Kenney's factual findings. **NHF Brief at pp. 36-38**. Second, NHF declares that reversal is required because following remand from this Court Judge Kenney arrived at a different outcome than Judge Mitchell had reached prior to the first appeal. ***Id.* at pp. 38-44**. Finally, NHF professes that both Judge Kenney and Judge Trenga erred in determining on the evidentiary record established at the confirmation hearing

that the Challenged Provisions are unenforceable.  *Id.* **at pp. 44-59**.  Each of these

avenues of attack lacks in merit for hosts of reasons more fully set forth below.

## ARGUMENT

### A.     The District Judge Did Not Apply the Incorrect Standard of Review

NHF's initial appellate thrust is to posit that Judge Trenga erred in

applying the "clearly erroneous" standard of review of Judge Kenney's factual

findings.  NHF urges that because Judge Kenney was not the judge who presided at

the confirmation hearing in October of 2009, his findings following remand are not

entitled to "clearly erroneous" deference.  **NHF Opening Brief at 36-38**.  This

first attack is flawed for at least three pronounced reasons.

First, Fed.R.Bankr.P. 8013 expressly directs, in pertinent part:

"findings of fact [by the Bankruptcy Judge] whether based on oral *or documentary*

*evidence*, shall not be set aside unless clearly erroneous."  (Emphasis supplied).

Judge Kenney's review of the transcript of the confirmation hearing record

following remand was a review of "documentary evidence." NHF's assertion that

Judge Kenney's findings are not entitled to "clearly erroneous" deference because

he was not the trial judge who observed the witnesses has been consistently

rejected.  *E.g., In re Leonard*, 849 F.2d 974, 976-77 (5th Cir. 1988); *Ankeny v.*

13

*Meyer (In re Ankeny),* 184 Bankr. 64, 69 (BAP 9th Cir. 1995)(decision by bankruptcy judge based upon declarations).

Second, at the Status Conference conducted on March 6, 2012, Bankruptcy Judge Kenney expressly offered NHF the opportunity to open the confirmation record and to present whatever evidence it chose. NHF refused this invitation and *expressly* *consented* to Judge Kenney making findings based upon the record established at the October 15, 2009 confirmation hearing. **JA1551-52 at ¶57**. Thus, this case is very unlike the decision in *Henry A. Knott Co. v. Chesapeake & Potomac Tel. Co.*, 772 F.2d 78 (4th Cir. 1985), cited by NHF. In *Henry A. Knott Co.*, a complex factual dispute was presented to a Fed.R.Civ.P. 53 special master. The reference to the master was later withdrawn without notice to the parties, and the same day the District Judge decided the case on the record made before the master. In particular, the District Judge decided the case without: (i) any notice to the parties, (ii) providing the parties with an opportunity to resubmit the evidence to the District Judge, (iii) offering the parties the opportunity to argue the case before the District Judge. *Id.* at 80.

This case is dramatically different. NHF: (i) had notice of Judge Kenney replacing Judge Mitchell following the latter's retirement, (ii) refused the opportunity to present evidence before Judge Kenney, and consented to him making findings based upon the record established at the previous confirmation

14

hearing, **JA1551-52 at ¶57**, and (iii) extensively briefed for Judge Kenney the evidence presented at the confirmation hearing, and its impact, before he made his findings and decision. **SA010-24.** Having knowingly taken its chances, NHF is now estopped to argue that Judge Kenney's findings are entitled to no deference when his ruling proved adverse to NHF. *E.g., Milbrew, Inc. v. Comm'r*, 710 F.2d 1302, 1308 (7th Cir. 1983); *see also Townsend v. Gray Line Bus Co*., 767 F.2d 11, 16-18 (1st Cir. 1985).

Finally, even though he disagreed Judge Trenga straightforwardly addressed NHF's argument that Judge Kenney's factual findings should be reviewed *de novo*. Accordingly, he reviewed the confirmation hearing record in detail, and he affirmed Judge Kenney's findings of fact under a *de novo* standard of review as well. **JA1825, n.6.** NHF's contest to Judge Trenga's assurance that he conducted a detailed review of the confirmation hearing record, and affirmed even under a *de novo* standard of review, evinces a brazen challenge to the integrity of the District Judge.

### B.   <u>An Identical Result is Not Required Following Remand</u>

As its next appellate challenge, NHF urges that reversal is required because the determination by Judge Kenney respecting the unenforceability of the Challenged Provisions following remand was different than the result achieved by Judge Mitchell at the conclusion of the confirmation hearing. **NHF Opening Brief**

15

**at 38-43.** NHF's argument that Judge Kenney was obliged to reach the same result as Judge Mitchell implants a glaring inconsistency,[9] and is particularly feeble in this case.

First, Judge Mitchell's result was plainly suspect because the Confirmation Order (findings and conclusions) that he entered was adopted verbatim from that submitted by NHF's counsel. This Court has repeatedly condemned the practice of trial courts adopting proposed findings and conclusions submitted by counsel, and it has declared that this exercise strips the findings of credibility. *Cuthbertson v. Biggers Bros.,* 702 F.2d 454, 458-59 (4th Cir. 1983)(and cases cited)(adoption of proposed findings and conclusions submitted by counsel is basis for remand); *Chicopee Mfg. Corp. v. Kendall Co.*, 288 F.2d 719, 724-25 (4th Cir. 1961); *see also Luhr Bros., Inc. v. Shepp (In re Luhr Bros., Inc.),* 157 F.3d 333, 338 n.4 (5th Cir. 1998); *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 616 F.2d 464, 466-67 (10th Cir. 1980). Judge Mitchell's adopted findings and conclusions are entitled to substantially "less weight and dignity

---

[9]    On the one hand, NHF professes that reversal is required because Judge Kenney did not reach the same result as Judge Mitchell. On the other hand, NHF acknowledges that "to be sure this Court left open the possibility that the record might not support the releases …" **NHF Opening Brief at p. 40**. Judge Trenga noted this striking conradiction, and remarked "[l]eft unexplained [by NHF] is how the Bankruptcy Court's inability to find facts sufficient to support the [Challenged Provisions] would not necessarily result in the Bankruptcy Court's refusal to include those provisions in the Reorganization Plan." *Behrmann*, 2013 U.S. Dist. LEXIS 49081, **19-20, n.7.

16

[than] … the unfettered and independent judgment of the trial judge." *Cuthbertson,* 702 F. 2d at 459, *quoting THE SEVERANCE,* 152 F.2d 916, 918 (4th Cir. 1945), *cert. denied,* 328 U.S. 853 (1945). It is notable, therefore, that this Court has already observed that the Confirmation Order entered by Judge Mitchell is merely conclusory, and it lacks the necessary specific findings. *Berhmann,* 663 F.3d at 712-13.

Second, in assessing NHF's argument it is important to return to the remand directive from this Court. The panel could not have been clearer:

> Put simply, to conclude, as [Judge Mitchell] did, that the Release Provisions (1) were "essential" to NHF's reorganization and appropriate given NHF's "unique circumstances"; (2) were an "essential means" of implementing the confirmed plan; (3) were an "integral element" of the transactions contemplated in the Confirmed Plan; (4) conferred a "material benefit" on NHF, its bankruptcy estate and its creditors; (5) were "important" to the plan's overall objectives; and (6) were "consistent" with applicable provisions of the Bankruptcy Code, is meaningless in the absence of specific factual findings explaining why this is so. Indeed, without more, the court's conclusions could apply just as well to any number of reorganizing debtors. … we must vacate the district court's judgment and remand the case to allow the bankruptcy court—*if the record permits it*—to set forth specific factual findings supporting its conclusions.

*Id.* at 712-13. (Emphasis supplied). On remand, Judge Kenney scrupulously executed this Court's remand directive. He determined that on the whole the evidentiary record does *not* permit the Bankruptcy Court to set forth the "specific factual findings" that would be necessary to sustain the Challenged Provisions.

17

To be clear, NHF essentially argues that Judge Kenney was obliged to sustain the Challenged Provisions if there was *any* evidence at the confirmation hearing to support them (so as to maintain consistency with the Confirmation Order). But this Court had the entire confirmation record before it on the first appeal. If the task was simply to review the record to determine if there was *any* evidence supporting the Challenged Provisions this Court would have done that, and its opinion would have turned on whether there was supporting evidence. Instead, this Court sent the case back to the Bankruptcy Court to perform more fully the trial court's traditional fact-finding function. Once Judge Kenney did that (in his August 27 Opinion), his findings are not to be disturbed on appeal unless "clearly erroneous." *Erhart v. Fina (In re Fina)*, 2012 U.S. Dist. LEXIS 163855 (E.D. Va. November 15, 2012) at *10. "Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Heilig-Meyers Co. v. Wachovia Bank, N.A. (In re Heilig-Meyers Co.),* 328 Bankr. 471, 474-75 (E.D. Va. 2005), *quoting Anderson*, 470 U.S. at 573-74.

Third, NHF's argument that Judge Kenney was obliged to reach a result consonant with the Confirmation Order is also inconsistent with the text of this Court's remand. This Court did *not* restrict Judge Kenney on remand only to selected portions of the record. The panel did *not* instruct the Bankruptcy Court to confine itself only to that evidence that might support the Challenged Provisions --

18

and to ignore all other evidence, regardless of its significance. Rather, this Court instructed the Bankruptcy Court to address "the record" to determine if "the record" -- as a whole -- justified the "specific factual findings" necessary to sustain the Challenged Provisions. Judge Kenney and Judge Trenga _both_ did exactly that, and they _both_ determined that such specific factual findings are not warranted.

C.    **The District Court Did Not Err in Determining that the Challenged Provisions are not Supported by the Factual Record**

NHF's last attack on appeal is that in rejecting the enforceability of the Challenged Provisions Judge Kenney and Judge Trenga committed clear error, and misapplied the relevant factors in assessing the enforceability of the Challenged Provisions. **NHF Opening Brief at pp. 44-59**. NHF's final thrust is also meritless.

Two important observations must be made at the inception of any consideration of this final attack. First, in connection with the first appeal to this Court the panel underscored this Court's concurrence with other circuits that strongly disfavor reorganization terms such as the Challenged Provisions:

> We agree with [Appellants] that approval of nondebtor releases in this context should be granted *cautiously and infrequently*. *See Deutsche Bank AG,* 416 F.3d at 142 ("No case has tolerated nondebtor releases absent the finding of circumstances that may be characterized as unique."); *Dow Corning,* 280 F.3d at 657-58 ("[S]uch an injunction is a dramatic measure to be used cautiously . . . ."); *Gillman v. Cont'l Airlines (In re Cont'l Airlines),* 203 F.3d 203, 213 (3rd Cir. 2000) (recognizing that

19

> nondebtor releases have been approved only in "extraordinary
> cases").

*Behrmann,* 663 F.3d at 712 (emphasis supplied).  This Court also stressed that in order to sustain such *extraordinary* plan terms as the Challenged Provisions, the Bankruptcy Court must enter specific findings that do not "apply just as well to any number of reorganizing Debtors." *Id*. at 713.

    The second observation is that several of NHF's arguments were raised for the first time on appeal.  In its very extensive brief submitted to Judge Kenney before he issued his August 27 Opinion, NHF elected *not* to raise several of the arguments arising from *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648 (6th Cir. 2002) that it urges here. **AA001-20.**  As the District Court informed in *In re Middle Plantation of Williamsburg, Inc.,* 47 Bankr. 884, 889-90 (E.D.Va. 1984), arguments not raised and properly preserved in the Bankruptcy Court will not be entertained on appeal. This Court's opinions are fully consonant.  *E.g., SSMC, Inc. v. Steffen*, 102 F.3d 704, 710 (4th Cir. 1996); *Skippy, Inv. v. CPC Int'l, Inc.,* 674 F.2d 209, 215 (4th Cir. 1982), *cert. denied*, 459 U.S. 969 (1982)(absent exceptional circumstances, arguments not raised in the trial court will not be considered on appeal).

    Pressing forward, however, for ease of understanding Appellees present the *Dow Corning* considerations in the same order as they are addressed in Judge Trenga's April 3 Opinion:

1.    **The Lower Courts Did Not Err in Finding that the Releases are Not Essential to NHF's Reorganization.**      NHF argues that Judge Kenney and Judge Trenga erred in finding that the Challenged Provisions are not essential to NHF's reorganization. **NHF Opening Brief at pp. 50-56**. More particularly, NHF contends that: (i) absent the releases its reorganization would founder on its bylaw indemnification obligation, *id.* **at pp. 51-53**, and that the Houk family members would not serve as directors and officers unless they are insulated by the Challenged Provisions from liability for pre-petition misconduct and wrongdoing. *Id.* **at pp. 53-56**. Again, these arguments fail for numerous factual and legal reasons.

First, NHF's argument wars with the express terms of the Reorganization Plan. As Judge Kenney observed, **JA1551 at ¶53,** the Reorganization Plan contains an explicit "severability provision" at Section 12.2. It provides:

> *Severability. Should any provision of this Plan be determined to be unenforceable, that determination shall in no way limit or affect the enforceability and operative effect of any other provision of this Plan. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or impaired in accordance with the foregoing, is valid and enforceable pursuant to its terms.*

NHF now tacitly argues that the severability provision does not apply to the Challenged Provisions (Sections 7.19 and 7.20 of the Reorganization Plan). NHF urges that if the severability provision is applied to the Challenged Provisions: (i)

21

its reorganization will be derailed by its bylaw indemnification obligation, and (ii) the Houk family members will refuse to serve as directors and officers. Tellingly, these arguments were never advanced by NHF in the Bankruptcy Court – particularly when NHF urged the Bankruptcy Court to confirm *the entire* Reorganization Plan (including Section 12.2). **SA010-24.** Thus, such an argument has no moment on appeal to this Court.

Second, NHF's argument conflicts with common sense and NHF's position in the Bankruptcy Court at confirmation. More particularly, if the prospect of invalidation of the Challenged Provisions: (i) would have caused the Houk family members to refuse to serve as NHF directors/officers, and (ii) imperiled the NHF reorganization, then confirmation of the Reorganization Plan would never have occurred. This follows because:

> A.    If (i) were true, those very same Houk family members -- who have at all times controlled NHF -- would not have authorized pursuit of confirmation of the Reorganization Plan -- *which expressly represents that these persons will serve as NHF's directors and officers (in Section 7.6) despite the prospect of invalidation of the Challenged Provisions (under Section 12.2).*

> B.    Moreover, NHF cannot argue that (ii) is true because one of the necessary statutory confirmation criteria that NHF was required to prove in respect of the Reorganization Plan – *a plan containing Section 12.2* -- was that "confirmation of the plan is not likely to be followed by liquidation or the need for further reorganization of the debtor." 11 U.S.C. §1129(a)(11).

"The judicial process is not some kind of game." *Penn. Nat'l Mut. Cas. Ins. Co. v. Roberts,* 668 F.3d 106, 117 (4th Cir. 2012). Having succeeded at confirmation of the Reorganization Plan by maintaining one position, NHF is not permitted to assume a contrary position "simply because [its] interests have [now] changed." *Id.*, *citing New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). This rule "prevents a party from prevailing on one phase of a case on an argument and then relying on a contrary argument to prevail in another phase." *Roberts,* 668 F.3d at 117, *quoting Pegram v. Herdrich,* 530 U.S. 211, 227 n.8 (2000).

Third, in inviting this Court improperly to substitute its judgment in respect of this factual finding by Judge Kenney and Judge Trenga, NHF invites this Court to: (i) reject the common sense approach of Judge Kenney, **JA1547 at pp. 18-20**, and Judge Trenga, **JA1826-37,** and (ii) engage in bald speculation. More particularly, *no* *evidence* was offered at the October 15, 2009 confirmation hearing as to the cost of fulfilling any putative indemnification obligation (which would turn on a rational assessment respecting how many suits may be filed, and the costs of defense), and *no* *evidence* was offered below respecting the impact of any hypothesized costs on NHF. Indeed, given the massive recovery that NHF has already received in from its insurer in connection with its bankruptcy case, and the prodigious additional recovery that NHF is currently pursuing against the insurer in

23

this Court,[10] any argument that NHF is imperiled by excision of the Contested

Provisions is not credible.

Finally, NHF is simply engaged in resurrecting arguments that have

been _flatly rejected_ by this Court when NHF presented those very same arguments

to this Court. On the first appeal to this Court NHF urged the identical arguments,

and the panel made short work of them:

> NHF has also failed to demonstrate how the relief requested by
> [Appellees] would jeopardize the success of the Confirmed
> Plan. On this point, NHF argues that it could incur substantial
> litigation costs in defending its directors and officers against
> claims brought by dissatisfied donors that would threaten its
> ability to continue operations. However, here NHF merely
> parrots certain conclusions of the bankruptcy court, for
> example, that the Release Provisions are "important to the
> overall objectives of the Plan," [citation omitted], ***and we have
> already noted that such conclusions lack adequate factual
> support***. We also note that the Confirmed Plan expressly
> provides that any clause may be severed should it be
> determined to be unenforceable, ***which suggests that the plan
> would remain viable absent the Release Provisions***.

_Behrmann,_ 663 F.3d at 713-14 (emphasis supplied).

### 2. <u>NHF's Directors and Officers Did Not Contribute</u>

<u>**Financially**</u>. Both Judge Kenney and Judge Trenga found that NHF's directors

_____

[10]    *See National Heritage Foundation, Inc. v. Philadelphia Insurance
Co*., 2012 U.S. Dist. LEXIS 154287 (E.D. Va. Oct. 25, 2012)(detailing the $18
million settlement already received by NHF from Philadelphia Indemnity
Insurance Company, as well as the colossal amounts being sought by NHF against
the insurer for, among other things, reimbursement of its payment of Donor claims
– including Appellees' claims).

24

and officers made no financial contribution in exchange for the benefits of the Challenged Provisions. **JA1558; JA1833-34.** NHF declares that this finding is "clearly erroneous" by suggesting that the Houk family members provided to NHF a "promise of continued service." **NHF Opening Brief at 48**. Of course, nowhere in the Reorganization Plan, or the corresponding Third Amended Disclosure Statement, **JA0486,** is there any "promise" by anyone to provide post-confirmation service for any period of time.[11]  Moreover, even if such phantom promise had existed (which it did not), it would not be of any moment. As Judge Kenney and Judge Trenga recognized, the United States Supreme Court has authoritatively ruled that a promise of future services is insufficient to establish new value (which requires a _financial_ contribution) for the purposes of plan confirmation. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 203 (1988). NHF offers no basis for reaching a different conclusion with respect to a "promise" of future services being adequate to support the Challenged Provisions.[12]  What is clear in any event is that

---

[11]    Indeed, John T. Houk, II, the founder of NHF, resigned from NHF following confirmation. *See* **JA1633.** He then initiated an e-mail campaign to NHF's contributors soliciting them to contribute to a newly formed competing charity, The International Philanthropic Institute. *See* www.fundraisingtipi.org. *See* **JA1637.**

[12]    Curiously, NHF declares that NHF fully funded the Reorganization Plan so there was no financial contribution necessary from the Houk family. **NHF Opening Brief at p. 48**. NHF ignores that if the Houk family had contributed financially to the Reorganization Plan there would have been a corresponding reduction in the financial burden to NHF.

in assessing the *Dow Corning* factors -- as prescribed by the Fourth Circuit -- the findings of Judges Kenney and Trenga finding that the NHF directors and officers did not contribute *financially* to the Reorganization Plan is not "clearly erroneous."

**3.    The Impacted Class Did Not Vote in Favor of the Reorganization Plan**.        Turning to the next *Dow Corning* factor, whether the impacted class voted in favor of the reorganization plan, NHF elected not to argue this *Dow Corning* factor before the Bankruptcy Court.[13]   Accoringly, this Court should not entertain NHF's argument here.   *Steffen*, 102 F.3d at 710; *Skippy, Inv.,* 674 F.2d. at 215.

Notwithstanding NHF's failure to argue this factor in the trial court, Judge Kenney and Judge Trenga both found that the "impacted" class did *not* vote in favor of reorganization.  **JA1560-1562; JA1834-35.**  In this case, the lower court judges correctly identified the impacted class as Class III(C) [those who had made donations to donor advised funds sponsored by NHF].   As Judge Kenney stated, "[h]ere the class *impacted* by the Release Provisions (the Donors) did not

---

[13]    NHF'S Brief in Support of Issuance of Supplemental Findings of Fact, filed on April 10, 2012, **SA001-25,** contains the only arguments presented to the Bankruptcy Court on remand.  There, NHF consciously elected not to address this component of the *Dow Corning* test in respect of the validity of the Contested Provisions.

vote to accept the Plan; rather, the class that was to be paid in full under the Plan (the Annuitants) voted to accept the plan." **JA1561.**  (emphasis supplied).

Judges Kenney and Trenga recognized that NHF had engaged in sharp maneuverings.  First, NHF orchestrated its Reorganization Plan so as to deny those who had contributed to donor advised funds sponsored by NHF (the "Donors") the right to: (i) vote on the Reorganization Plan, and (ii) participate in any reorganization payments by NHF.[14]  Simultaneously, NHF pressed the Contested Provisions in the Reorganization Plan to deny the Donors the right to recover

---

[14]     During its reorganization and prior to the bar date, NHF represented to the Donors that they did not hold claims against NHF.  **See JA1639.**  This dissuaded Donors from filing proofs of claim in the NHF case -- and NHF capitalized by utilizing the "bar date" to disallow all untimely filed Donor claims.  *See* Fed.R.Bankr.P.  3003(c)(3).   With respect to those Donors who were sufficiently astute timely to file claims, NHF responded by revising its previous version of the reorganization plan to include a new class for these Donor claims.  This new class -- Class III(C) -- first appears in NHF's Fourth Amended Reorganization Plan.  NHF carefully crafted to propose to pay the "allowed" Class III(C) claims in full.  The effect of this maneuver was to cause Class III(C) to be "unimpaired" under 11 U.S.C. §1124.  It was important for NHF to cause the donor class to be "unimpaired" under Section 1124 of the Bankruptcy Code because this stripped Class III(C) of the right to vote on the Reorganization Plan. 11 U.S.C. §1126(f).

Of course, at Section 7.8 of its Third Amended Disclosure Statement, NHF acknowledges that it will (and, in fact, did) object to all claims timely filed by Donors.  **JA0503 at §7.8**.  Thus, the NHF strategy involved simultaneously: (i) objecting to all timely filed Donor claims (which was designed to deny the Donors of any right of recovery under the Reorganization Plan), and (ii) seeking an unconditional release of the Houk family members and an injunction barring the Donors from pursuing the Houk family members for pre-petition wrongdoing and misconduct.

against the non-debtor Houk family members outside the bankruptcy arena.  Judge Kenney observed that since NHF was paying its Annuitant class in full under the Reorganization Plan the Annuitant class of creditors was not impacted by the Contested Provisions.  It is only Class III(C) -- the class of Donors -- that NHF impacted by the Contested Provisions.  No Donor ever voted to accept the Reorganization Plan.

By fashioning its Reorganization Plan to provide that Class III(C) was not entitled to vote on the plan, NHF paved a path to confirmation uninterrupted by an adverse vote by the class of Donors.  The finding by the lower court judges that the class impacted by the Contested Provisions [Class III(C)] did not vote in favor of the Reorganization Plan -- because it was never afforded the right to vote on the Reorganization Plan -- is not "clearly erroneous."

4. **The Reorganization Plan Does Not Provide a Mechanism to Pay the Affected Class.**  In respect of the next *Dow Corning* factor, whether the reorganization plan provides a mechanism to pay the affected class, NHF again consciously chose not to argue this *Dow Corning* consideration before the Bankruptcy Court.[15]  On appeal, NHF raises a feeble argument, and one which this Court should not entertain since NHF elected not to argue it before Judge Kenney. *Steffen*, 102 F.3d at 710; *Skippy, Inv.,* 674 F.2d. at 215.

---

[15]        *See* note 14, *supra*.

Notwithstanding NHF's failure to argue this factor in the trial court, Judges Kenney and Trenga found that the Reorganization Plan does *not* provide a mechanism for the payment of all or substantially all of the claims affected by the Challenged Provisions, specifically the Donor claims.  **JA1562-63; JA1835-36.** Here, NHF asks this Court to "find on appeal" that the Reorganization Plan provides a mechanism for payment of the Donor claims.  NHF posits that if: (i) the Donor claimants had timely filed claims, and (ii) such Donor claimants prevailed over NHF's inevitable objections to all such Donor claims, any allowed Donor claims would have been paid under the terms of the Reorganization Plan.  **NHF Opening Brief at p. 58**.  The argument is disingenuous for at least two conspicuous reasons.

First, during its bankruptcy case NHF repeatedly represented to the Donors that they held no right of recovery against NHF.  ***See e.g.,*** **JA1639; JA0503 at §7.8**.  Moreover, even if the Donors had not been earlier duped by NHF, the Third Amended Disclosure Statement accompanying the Reorganization Plan is menacing.  It announces to the Donors that "[NHF] will object to the claims filed by Donors and, as such, the Donors will not have Allowed Claims under Section 502 of the Bankruptcy Code and will not be entitled to vote to accept or reject the Plan pursuant to Section 1126 of the Bankruptcy Code." **JA0503 at §7.8.**  Thus, with respect to the Donor claims NHF engaged in a powerful

29

campaign to convince the Donors that there was no mechanism to pay them under the Reorganization Plan.

Second, as Judge Kenney noted in his August 27 Opinion, **JA1562-63**, this case differs dramatically from this Court's decision in *Menard-Sanford v. Mabey (In re A.H. Robins Co.)*, 880 F.2d 694 (4th Cir. 1989) -- a case that illustrates how this *Dow Corning* factor is to be applied.  In *A.H. Robins*, the reorganization plan provided for payment of claims adversely impacted by the release *even in respect of those claims that had not been timely filed*.  In this case, NHF represented to the Donors that they must not file claims, and then provided no mechanism to pay these claims if they were not timely filed.

As Judges Kenney and Trenga properly found, the NHF Reorganization Plan does not "channel" the Donor claims into payment under the Reorganization Plan (as an alternative to pursuing the claims against the Houk family).  Rather, the Reorganization Plan seeks to disallow and fully cancel the Donor claims.  **JA1563; JA1836-37**.  The finding by Judge Kenney and Judge Trenga is painfully accurate, and certainly not "clearly erroneous."

**5**.    **The Reorganization Plan Does Not Provide an Opportunity for Those Who Chose Not to Settle to Recover in Full**.  In respect of the last *Dow Corning* factor, Judge Kenney and Judge Trenga found that the Reorganization Plan does *not* provide an opportunity for those Donors who choose

30

not to settle to be paid outside the Reorganization Plan. **JA1563; JA1836-37**. Again, NHF elected not to argue this *Dow Corning* factor before Judge Kenney.[16] And, once again, NHF raised -- for the first time on appeal before Judge Trenga – the same anemic argument. It should not be entertained in this Court since NHF elected not to present or argue it before the Bankruptcy Court. *Steffen*, 102 F.3d at 710; *Skippy, Inv.,* 674 F.2d at 215.

NHF repeats the argument that had the Donors timely filed claims against NHF, and if they had overcome NHF's commitment to object to all such Donor claims, the Reorganization Plan provided the Donors with an "opportunity" for payment. **NHF Brief at 59**. This is simple rehashing of the very same argument being raised for the first time on appeal. And, once again, NHF's argument misses the thrust of this factor.

The source of this *Dow Corning* factor is again this Court's decision in *A.H. Robins*. In that case, certain claimants who opted out of a settlement funded by the Debtor's insurer (Aetna) were barred from pursuing claims against the Debtor's directors and officers. However, in *A.H. Robins* the creditors who opted out of the settlement retained their rights to recover outside the reorganization plan by pursuing suit against Aetna. In contradistinction, the NHF Reorganization Plan was not funded by any third party source, and the Donors

---

[16]      *See* note 14, *supra*.

31

were not offered any source of payment of their claims outside of the Reorganization Plan. Accordingly, the finding by Judges Kenney and Trenga that this factor was not satisfied by NHF, and that the Challenged Provisions operate to preclude recovery outside of the Reorganization Plan, is not "clearly erroneous."

## **<u>CONCLUSION</u>**

For all of the foregoing reasons this Court should enter judgment affirming the April 3, 2013 Memorandum Opinion and judgment of the District Court.

Dated:  August 30, 2013.

Respectfully submitted,


/s/ Glenn W. Merrick
Glenn W. Merrick, CO 10042
G.W. MERRICK & ASSOCIATES, LLC
6300 South Syracuse Way, Suite 220
Centennial, Colorado 80111
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
gwm@gwmerrick.com

- and -

Daniel J. Schendzielos
COLORADO TRIAL LAWYERS
        & LEGAL SERVICES, LLC
8547 East Arapahoe Road, Suite J-534
Greenwood Village, Colorado 80112
Telephone: (303) 330-1234
Facsimile: (303) 957-2382
denverdaniel@gmail.com

ATTORNEYS FOR APPELLEES

33

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1.      The undersigned certifies that this Brief complies with the type-volume limitations of Fed.R.App. P. 28(1)(e)(2) or 32(a)(7)(B) because:

☒      this Brief contains 7,527 words, excluding the parts of the Brief exempted by Fed.R.App.P. 32(a)(7)(B)(ii), *or*

☐      this Brief uses a monospaced typeface and contains ___ lines of text, excluding the parts of the Brief exempted by Fed.R.App.P. 32(a)(7)(B)(iii).

2.      The undersigned certifies that this Brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6) because:

☒      this Brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font; *or*

☐      this Brief has been prepared in a monospaced typeface using ___ with ___.

/s/ Glenn W. Merrick
Glenn W. Merrick, CO 10042
G.W. MERRICK & ASSOCIATES, LLC
6300 South Syracuse Way, Suite 220
Centennial, Colorado 80111
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
gwm@gwmerrick.com

34

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 30, 2013, I electronically filed the foregoing APPELLEES' RESPONSE BRIEF on behalf of Appellees with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel of record.  I further certify that I served a copy of the foregoing by Federal Express, next day delivery, on the following:

*Counsel for Appellant*

Erika J. Morabito, Esq.
Rory E. Adams, Esq.
Foley & Lardner LLP
3000 K Street N.W., Suite 600
Washington, DC 20007

David B. Goroff, Esq.
Foley & Lardner, LLC
321 N. Clark Street, Suite 2800
Chicago, Illinois  60654

*United States Trustee's Office*

Joseph A. Guzinski, Esq.
Office of the United States Trustee, Region 4
115 South Union Street, Suite 210
Alexandria, Virginia  22314

/s/ Glenn W. Merrick
Glenn W. Merrick, CO 10042
G.W. MERRICK & ASSOCIATES, LLC
6300 South Syracuse Way, Suite 220
Centennial, Colorado 80111
Telephone: (303) 831-9400
Facsimile: (303) 771-5803
gwm@gwmerrick.com